## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

36 BUILDERS, INC., a Delaware corporation, doing business as INSIGHT HOMES, and INSIGHT LAND COMPANY, LLC, a Delaware limited liability company,

      Plaintiffs,

v.

JACK HUTCHINS HAESE,

      Defendant.

)
)
)
)
)
)
)
)
)
)
)
)

C.A. No. 20-cv-1669-MN

## PLAINTIFF'S OPENING BRIEF IN SUPPORT OF ITS
## MOTION TO DISMISS COUNTERCLAIM

FAEGRE DRINKER BIDDLE & REATH LLP
Joseph C. Schoell (Del. Bar No. 3133)
222 Delaware Avenue, Suite 1410
Wilmington, Delaware 19801
Tel: (302) 467-4200
Email: joseph.schoell@faegredrinker.com

*Attorneys for Plaintiffs 36 Builders, Inc.,*
*doing business as Insight Homes, and*
*Insight Land Company, LLC*

January 8, 2021

# TABLE OF CONTENTS

**Page**

NATURE AND STAGE OF THE PROCEEDINGS ...................................................1

SUMMARY OF ARGUMENT ................................................................................2

STATEMENT OF FACTS .......................................................................................3

ARGUMENT ...........................................................................................................9

      I.      THE COUNTERCLAIM FAILS TO ALLEGE A PREDICATE
             VIOLATION UNDER THE DWPA .................................................11

      II.     THE COUNTERCLAIM FAILS TO ALLEGE CONSTRUCTIVE
             DISCHARGE, THREATS OR DISCRIMINATORY TREATMENT OF
             HAESE BY INSIGHT HOMES THAT WERE PRIMARILY CAUSED
             BY HAESE'S ALLEGED WHISTLEBLOWING ACTIVITIES .....................14

CONCLUSION .......................................................................................................17

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ....................................................................................9, 10

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) ............................................................................................9

*Buck v. Hampton Twp. Sch. Dist.,*
    452 F.3d 256 (3d Cir. 2006) ............................................................................10

*Chance v. Kraft Heinz Foods Co.,*
    2018 WL 6655670 (D. Del. Dec. 17, 2018) ....................................................10

*Clemons v. New Castle County,*
    2020 WL 5978343 (D. Del. Oct. 8, 2020) ..........................................................9

*Drumgo v. Little,*
    2014 WL 6811835 (D. Del. Dec. 2, 2014) ..........................................................9

*Drummond v. Amazon.com.DEDC, LLC,*
    2018 WL 5629811 (D. Del. Oct. 31, 2018) ......................................................16

*Golod v. Bank of America Corp.,*
    403 F. App'x 699 (3d Cir. 2010) ......................................................................16

*Golovan v. Univ. of Del.,*
    73 F. Supp. 3d 442 (D. Del. 2014) ...................................................................11

*Hayman v. City of Wilmington,*
    2020 WL 6342604 (Del. Super. Ct. Oct. 29, 2020) ..........................................10

*Hopkins v. Concorde Career Colleges, Inc.,*
    2016 WL 1238775 (D. Del. Mar. 29, 2016) .......................................................9

*Meltzer v. City of Wilmington,*
    2011 WL 1312276 (Del. Super. Ct. Apr. 6, 2011), *aff'd,* 36 A.3d 360 (Del.
    2012).................................................................................................................12

*Parkell v. Pierce,*
    2018 WL 3104406 (D. Del. June 22, 2018) .......................................................9

# TABLE OF AUTHORITIES
### (continued)

**Page**

*Pratt v. M&T Bank Corp.*,
    230 F. Supp. 3d 343 (D. Del. 2017) ........................................................................ 10, 11, 12

*Siwulec v. J.M. Adjustment Servs., LLC*,
    465 F. App'x 200 (3d Cir. 2012) .........................................................................................9

*Smith v. Del. State Univ.*,
    47 A.3d 472 (Del. 2012) .....................................................................................................15

*State v. Pierson*,
    86 A.2d 559 (Del. Super. Ct. 1952) ...................................................................................13

**Statutes**

6 *Del. C.* §§ 3501-3509 .........................................................................................................13

6 *Del. C.* § 3502 ...................................................................................................................13

6 *Del. C.* § 3504 .........................................................................................................7, 12, 13

19 *Del. C.* § 1702(6)(b) ............................................................................................ 11, 12, 13, 14

19 *Del. C.* § 1703 (3)-(4) .....................................................................................................12

19 *Del. C.* §§ 1703 .................................................................................................................11

19 *Del. C.* § 1708 ...........................................................................................................11, 16

28 *U.S.C.* § 1332 .....................................................................................................................1

Delaware Whistleblowers' Protection Act, 19 *Del. C.* §§ 1701-1708 ...................................*passim*

**Other Authorities**

Fed. R. Civ. P. 12(b)(6) ........................................................................................................*passim*

<u>NATURE AND STAGE OF THE PROCEEDINGS</u>

On October 8, 2020, Plaintiffs 36 Builders, Inc., doing business as Insight Homes ("Insight Homes"), and Insight Land Company, LLC (collectively, "Plaintiffs"), commenced an action in the Delaware Court of Chancery against Defendant Jack Hutchins Haese ("Defendant" or "Haese"). Plaintiffs allege in their Complaint (the "Complaint") that Haese breached an employment agreement and his fiduciary duties in connection with his service as the Chief Financial Officer of Insight Homes and in connection with his post-employment activities following his resignation from Insight Homes effective as of August 1, 2018. *See* D.I. 1, Exhibit 1 ¶¶ 11-38.

Plaintiffs served Haese with the Complaint and summons on November 19, 2020. D.I. 1 ¶ 7.

On December 8, 2020, Haese caused the Delaware Court of Chancery action to be removed to this Court pursuant to 28 U.S.C. § 1332. D.I. 1.

On December 18, 2020, Haese filed an "Answer and Counterclaims" (the "Answer and Counterclaim") in which he answered the allegations of the Complaint, and asserted a Counterclaim against Insight Homes alleging violation of the Delaware Whistleblowers' Protection Act, 19 *Del. C*. §§ 1701-1708 (the "DWPA"). D.I. 3. The Counterclaim is comprised of paragraphs 42 through 59 of the Answer and Counterclaim, and is referred to below as the "Counterclaim." D.I. 3 ¶¶ 42-59.[1]

On January 8, 2021, Insight Homes filed a Motion to Dismiss the Counterclaim (the "Motion to Dismiss"). This is Insight Homes' Opening Brief in Support of its Motion to Dismiss.

---

[1] The Counterclaim does not assert any claim against or concerning Plaintiff Insight Land Company, LLC.

## SUMMARY OF ARGUMENT

Haese's Counterclaim fails to state a claim upon which relief can be granted, and should be dismissed in its entirety pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, because:

`        1.        Haese fails to adequately allege a predicate violation of law necessary to invoke the DWPA (Argument, Point I, below); and

        2.        Haese fails to adequately allege that his reporting or refusal to participate in any predicate violation of law is the "primary basis" for any actionable discrimination or adverse employment action (Argument, Point II, below).

<u>STATEMENT OF FACTS</u>[2]

Plaintiff-Counterclaim Defendant Insight Homes is a Delaware corporation. *See* Complaint ¶ 2, and Exhibit A at 1; *see also* Answer and Counterclaim ¶ 6 (Haese admitting the authenticity of his employment agreement with Insight Homes). Defendant Haese is a resident of the State of Maryland. Complaint ¶ 3; Answer and Counterclaim ¶ 3.

From September 30, 2016 through August 1, 2018, Haese was the Chief Financial Officer, or CFO, of Insight Homes. Complaint ¶¶ 6-7; Answer and Counterclaim ¶¶ 6-7. Haese resigned his employment as Insight Homes' CFO on or around July 16, 2018, effective as of August 1, 2018. Complaint ¶ 7; Answer and Counterclaim ¶ 7.[3] Haese's employment with Insight Homes was governed by a written Employment Agreement, with an Effective Date of September 30, 2016 (the "Employment Agreement"). Complaint, Exhibit A.

By its express terms, the Employment Agreement provided that Haese's employment with Insight Homes was "AT-WILL." Employment Agreement § 3(a). The Employment Agreement incorporated an expansive description of Haese's job duties, and indicated that Insight Homes "retain[ed] the right to modify the Executive's [*i.e.*, Haese's] job title and responsibilities pursuant to the legitimate business needs of the Company [*i.e.*, Insight Homes], provided that any such modification in title or responsibilities is consistent with the Executive's expertise and training and does not constitute a substantial and material diminution in the Executive's compensation." Employment Agreement § 1(a).

---

[2] As required by Federal Rule of Civil Procedure 12(b)(6), the allegations of the Counterclaim are accepted as true for purposes of deciding a motion to dismiss. Insight Homes denies many of the allegations asserted in the Counterclaim and reserves the right to refute those allegations should its Motion to Dismiss not be granted in its entirety.

[3] When his employment with Insight Homes concluded in August 2018, Haese continued on with a consulting relationship with Insight Homes through his affiliated entity, Sequoia, LLC ("Sequoia"). Complaint ¶ 13, and Exhibit C; Answer and Counterclaim ¶ 13.

The five-page "Job Description" attached to Haese's Employment Agreement provided for an array of duties and functions related to the CFO position. *See* Employment Agreement, Attachment A (pp. 7-11). According to the Job Description, Haese's "Priority Activities" included closing debt and equity transactions. *Id.* § (I)(A). Haese's Job Description also provided that he had authority for managing Insight Homes' land contracting activities. *Id.* § (II)(C).

The Employment Agreement stated that Haese was to report to the President and CEO of Insight Homes, who would serve as the "Executive's Manager." Employment Agreement § 1(b). During his employment with Insight Homes, Insight Homes' President and CEO, Robert M. Lisle, served as Haese's Manager. *See* Counterclaim ¶ 45 (identifying Mr. Lisle as Insight Homes' owner); Employment Agreement at 6. Haese was obligated to follow the directions of his Manager:

> The Executive shall be subject to, and shall act in accordance with, all reasonable legal instructions and directions of the Executive's Manager which are consistent with the above position and commensurate with duties and responsibilities of similar level executives of corporations comparable to Insight Homes, as well as any other duties as may from time to time be reasonably assigned by Insight Homes that are commensurate with Executive's position.

Employment Agreement § 1(b).

In his Counterclaim, Haese alleges that, as Insight Homes' CFO, he was responsible for the production of financial reports and financial statements for banking sources and bonding companies. Counterclaim ¶ 45. At some point during his tenure as Insight Homes' CFO, Haese contends that he "arranged financing" through Eagle Bank of Maryland and Essex Bank of Maryland and with Adler Financial Group (Dashco), a privately owned real estate investor. Counterclaim ¶ 46. The Counterclaim fails to describe at all the "financing" that Haese "arranged." The Counterclaim lacks any allegation concerning the amount of such financing, its purpose, when

specifically such financing was arranged. Most critically, the Counterclaim fails to relate the "arranged financing" to any allegation of purported wrongdoing by Insight Homes or whistleblowing activities upon which Haese's DWPA claim is based.

The Counterclaim alleges that in the fall of 2017, Haese "became increasingly concerned over the financial position" of Insight Homes and related entities, and that such entities were "carrying millions in past due payables." Counterclaim ¶ 47. Haese alleges that he and Insight Homes' accounting staff "endured countless phone calls" from unhappy trade creditors during this time period, asking for payment on past due accounts. *Id.* The Counterclaim does not identify any specific trade creditor, or the particular amount or amounts that were in arrears as of the fall of 2017 (except to contend it was in the millions). The Counterclaim does not allege that Insight Homes' failure to remain current on trade receivables was materially inconsistent with or a substantial deviation from any applicable accounting standard or law.

The Counterclaim next alleges that in the spring of 2018, Haese was contacted by representatives of the Delaware Department of Justice Consumer Affairs Division. Counterclaim ¶ 48. Haese contends that he received and forwarded a letter from the Delaware Attorney General's office to Insight Homes' Chief Executive Officer, Mr. Lisle. *Id.* Haese further alleges that Insight Homes "entered into a plea agreement … admitting guilt and paying a substantial fine for false and misleading advertising." Counterclaim ¶ 49. Haese does not allege that the purported contact from the Delaware Attorney General's office had anything to do with his job responsibilities or that he made any complaint about the contact or the subject matter of the Attorney General's claims. Haese does not allege anything concerning the nature of the "plea agreement" or the "false and misleading advertising" that are the subject of his allegations. Finally,

Haese nowhere in his Counterclaim alleges that the purported "false and misleading advertising" referenced in the Counterclaim related to financial management or accounting standards.

In his Counterclaim, Haese asserts that the "Maryland Escrow accounts" of Insight Homes were depleted and that he discussed that issue with Insight Homes' Controller (Amy Cavallini) and General Counsel (Andrew Campanelli). Counterclaim ¶¶ 50-51. The Counterclaim provides no specific allegations concerning the "Maryland Escrow accounts." For instance, there is no allegation concerning the amounts held in the accounts, where the accounts were held or for what purpose, or to what extent the "Maryland Escrow accounts" were "depleted." Although the Counterclaim asserts that Haese complained that the purported "depletion" of the "Maryland Escrow accounts" constituted a "violation of law" (Counterclaim ¶ 51), Haese does not allege what law or laws he contends (or contended at the time) were violated. Paragraph 50 of the Counterclaim includes an unspecified reference to "Maryland law" in discussing the escrow accounts. Counterclaim ¶ 50.

Haese alleges that "shortly" after the time that he allegedly complained of some unspecified violation of law related to the escrow accounts, Mr. Lisle announced the hiring of a CPA named Paula Sachs, described in the Counterclaim as a "past school friend" of Mr. Lisle's. Counterclaim ¶ 52. The Counterclaim alleges that Ms. Sachs "was introduced as the new Chief Financial Officer and Director of Financial Reporting" for Insight Homes, but does not say who specifically "introduced" her as such. Counterclaim ¶ 52. The Counterclaim does not allege that any written statement (or even a specific oral statement) provided Ms. Sachs with the CFO title. Notably, the Counterclaim lacks any allegation that Haese was told, or that he even assumed, that the hiring of Ms. Sachs by Insight Homes related to his alleged complaints about any Insight Homes issue. The

Counterclaim fails to allege a specific date of the hiring of Ms. Sachs (or even a general date in relation to Haese's July 2018 announcement of his resignation).

Next, the Counterclaim contends that, after the announcement of the hiring of a different financial person, "Haese noticed that he had no further access to any of the computer records despite his responsibility for various accounts under his Employment Agreement…." Counterclaim ¶ 53. Haese's Counterclaim does not identify any specific "computer records" to which he lost access, or any of the "various accounts" to which the "computer records" pertain.

Tellingly, although the Counterclaim implies that Haese's duties were diminished due to complaints he made concerning Insight Homes' activities, there is no allegation in the Counterclaim that Haese ever contended that he had been improperly terminated or disciplined in any way. He does not contend that he was terminated without cause pursuant to his Employment Agreement with Insight Homes. *See* Employment Agreement § 3(b). To the contrary, Haese acknowledges that he resigned his employment "as alleged in paragraph 7 of the Complaint." Answer and Counterclaim ¶ 7. Further, the Counterclaim is devoid of any suggestion that Haese ever questioned or complained about the nature of his separation from employment, or that he complained to anyone about any purported conduct of Insight Homes, at any time prior to his filing of the Counterclaim on December 18, 2020.

Haese alleges that in the summer of 2018, he became concerned about "past due payables" that continued to rise and compliance with 6 *Del. C.* § 3504 "due to the existence of millions of dollars outstanding on houses that had been settled 90-120 days prior." Counterclaim ¶ 55. "Haese confronted his superiors with these issues and refused to sign closing certifications he now knew to be false." *Id*. Again, Haese's allegations are most striking for what they leave unsaid – for example, what "superiors" he confronted, what "past due payables" he referred to, to whom were

the payables due, and with respect to what "houses," and what "closing certifications" had Haese been asked to sign? The Counterclaim fails even to allege whether, or how, the "closing certifications" related to the "past due payables" about which Haese alleges he complained. The Counterclaim alleges no facts related to basic issues about Haese's purported claim.

Finally, the Counterclaim alleges "Insight Homes violated the DWPA, when it constructively discharged, threatened, and otherwise discriminated against Haese regarding the terms, conditions and privileges, because he reported and refused to assist in violations as defined in the DWPA." Counterclaim ¶ 58. Even if Haese could argue that conclusory allegations concerning Insight Homes' employment of a financial professional or limiting his access to computer information amounted to "discrimination" (and as explained below, Haese's allegations are wholly inadequate), the Counterclaim lacks even conclusory allegations of fact that would support any inference that Haese was "constructively discharged" or "threatened" in any way.

<u>ARGUMENT</u>

A complaint or counterclaim must contain allegations of fact sufficient to state a claim that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Siwulec v. J.M. Adjustment Servs., LLC*, 465 F. App'x 200, 202 (3d Cir. 2012).[4] To survive a motion to dismiss, the facts alleged must "'raise a right to relief above the speculative level'. . . [and] indicate that a defendant's liability is more than 'a sheer possibility.'" *Siwulec*, 465 F. App'x at 202. If the facts alleged "are 'merely consistent with' a defendant's liability" the claim "'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* "At bottom, '[t]he complaint must state enough facts to raise a reasonable expectation that discovery will reveal evidence of [each] necessary element' of a plaintiff's claim." *Parkell v. Pierce*, 2018 WL 3104406, at *2 (D. Del. June 22, 2018).

When considering a Rule 12(b)(6) motion, a court must: "'(1) identify[ ] the elements of the claim, (2) review[ ] the complaint to strike conclusory allegations, and . . . (3) look[ ] at the well-pleaded components of the complaint and evaluat[e] whether all of the elements identified in part one of the inquiry are sufficiently alleged.'" *Drumgo v. Little*, 2014 WL 6811835, at *3 (D. Del. Dec. 2, 2014). After doing away with allegations that amount to nothing more than "labels and conclusions," the court then identifies the "nub" of the plaintiff's complaint—the "well-pleaded, nonconclusory factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009); *see also Clemons v. New Castle County*, 2020 WL 5978343, at *2-*3 (D. Del. Oct. 8, 2020) (explaining the *Twombly*/*Iqbal* standard).

---

[4] Like a complaint, a counterclaim is subject to dismissal under Rule 12(b)(6) where it fails to state claim upon which relief can be granted. *See, e.g., Hopkins v. Concorde Career Colleges, Inc.*, 2016 WL 1238775, at *1-*2 (D. Del. Mar. 29, 2016) (addressing motion to dismiss amended counterclaim under Rule 12(b)(6)).

In short, a complaint or counterclaim must "show" with its facts "that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. When proceeding under Rule 12(b)(6), a court may examine documents "attached to or submitted with the complaint, and any 'matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case.'" *Buck v. Hampton Twp. Sch. Dist.,* 452 F.3d 256, 260 (3d Cir. 2006).

The DWPA "prohibits an employer from retaliating against an employee for reporting certain violations of law." *Hayman v. City of Wilmington*, 2020 WL 6342604, at *2 (Del. Super. Ct. Oct. 29, 2020). "In order to qualify as a violation under the [DWPA] the employer misconduct must speak to public health or safety or to fraud." *Pratt v. M&T Bank Corp*., 230 F. Supp. 3d 343, 346 (D. Del. 2017).

A *prima facie* case for a violation of the DWPA requires allegations that "(1) the employer engaged in whistleblowing activity; (2) the accused official knew of the protected activity; (3) the employee suffered an adverse employment action; and (4) there is a causal connection between the whistleblowing activity and the adverse action." *Chance v. Kraft Heinz Foods Co*., 2018 WL 6655670, at *10 (D. Del. Dec. 17, 2018) (citing *Addison v. East Side Charter School of Wilmington, Inc*., 2014 WL 4724895, at *3 (Del. Super. Ct. Sept. 19, 2014)).

In this case, the Counterclaim fails to state a claim because (1) the Counterclaim fails to allege a predicate "violation" as required by the DWPA, (2) the Counterclaim fails to allege constructive discharge, threats or any actionable discriminatory treatment of Haese by Insight Homes, and (3) the Counterclaim fails to allege a causal connection between any purported "whistleblowing activity" of Haese and any adverse employment action by Insight Homes. Accordingly, the Counterclaim should be dismissed for failure to state a claim.

I.     THE COUNTERCLAIM FAILS TO ALLEGE A PREDICATE VIOLATION UNDER THE DWPA

The DWPA prohibits an employer from discharging, threatening or discriminating against an employee for reporting a violation of specific laws, where the report of a violation is the "primary basis" for the adverse employment action. *See* 19 *Del. C.* §§ 1703, 1708; *Golovan v. Univ. of Del.*, 73 F. Supp. 3d 442, 456-57 (D. Del. 2014).

Only specific types of violations will support a claim under the DWPA. As it relates to acts of fraud or misappropriation, a "violation" is an act or omission of the employer that is:

> b.     Materially inconsistent with, and a serious deviation from, financial management or accounting standards implemented pursuant to a rule or regulation promulgated by the employer or a law, rule, or regulation promulgated under the laws of this State, a political subdivision of this State, or the United States, to protect any person from fraud, deceit, or misappropriation of public or private funds or assets under the control of the employer.

19 *Del. C.* § 1702(6)(b).

As explained by this Court in *Pratt*:

> The [DWPA] requires that the reported employer misconduct violate (1) a financial management standard or accounting standard (2) enshrined in a federal or state law, rule or regulation, and (3) aimed at fraud, deceit, or misappropriation of funds.

230 F. Supp. 3d at 346. Further, the DWPA "does not reach to cover anything that is tangentially related to financial management or accounting." *Id*. at 347 (citing *Harmon v. State*, 2007 Del. Super. LEXIS 571, at *4-*5 (Del. Super. Ct. Nov. 28, 2007)).

While the Counterclaim alludes to alleged wrongdoing by Insight Homes, it fails to allege a violation that would support Haese's DWPA claim.

The Counterclaim makes vague references to claims of "false and misleading advertising" that was the subject of an inquiry by the Delaware Department of Justice Division of Consumer

Affairs. Counterclaim ¶¶ 48-49. Haese makes no claims concerning the nature of the alleged "false and misleading advertising." He identifies no statute that he contends Insight Homes violated. He identifies no funds that were allegedly obtained by Insight Homes through the allegedly false and misleading advertising. Critically, the Counterclaim fails to allege any relationship between the allegedly false and misleading advertising and any relevant "financial management or accounting standards" required to establish a "violation" under Section 1702(6)(b) of the DWPA. Therefore, Haese's vague references to false and misleading advertising fail to allege a predicate violation under the DWPA. *See, e.g., Pratt*, 230 F. Supp. 3d at 346 (claim of violation of data privacy requirements did not meet the definition for violation under DWPA); *Meltzer v. City of Wilmington*, 2011 WL 1312276, at *10 (Del. Super. Ct. Apr. 6, 2011) (City's decision-making related to management of litigation could not be a "violation" under § 1702(6)(b)), *aff'd*, 36 A.3d 360 (Del. 2012) (Table).[5]

The Counterclaim also alleges that Haese objected to Insight Homes' being substantially behind on its accounts payable to creditors, and expressed concern that Insight Homes' violated the Delaware Prompt Pay Statute, 6 *Del. C.* § 3504. *See* Counterclaim ¶¶ 47, 55. Notably, the Counterclaim fails to allege how much money was owed by Insight Homes (other than using the term "millions"), to whom such monies were owed, whether Insight Homes possessed or had received funds with which to pay subcontractors any amounts claimed. Haese identifies no actions

---

[5] A separate deficiency of Haese's vague contentions concerning misleading advertising is that the Counterclaim nowhere alleges that Haese ever reported any purported violation to Insight Homes, complained about a violation, or took any action whatsoever other than taking a phone call and routing a letter to Mr. Lisle. On that ground, any DWPA claim rooted in the allegations of misleading advertising must fail. *See* 19 *Del. C.* § 1703 (3)-(4) (describing whistleblowing activities required to invoke the DWPA).

or claims brought against Insight Homes by persons allegedly entitled to payment or any mechanics' liens issued with respect to funds required to be paid.

Haese's threadbare allegations concerning debts owed by Insight Homes do not allege a violation under Section 1702(6)(b) of the DWPA. First, the allegations of the Counterclaim are completely conclusory. Second, owing money to trade creditors – even large amounts of money and for a substantial period of time – does not amount to a significant deviation from a financial management standard or accounting standard. Being in arrears on bills does not constitute fraud, deceit or misappropriation of funds.[6]

Finally, Haese asserts in his Counterclaim that Insight Homes caused the depletion of escrow accounts. Counterclaim ¶¶ 50-51. The Counterclaim fails to specify what monies were held in escrow, for whose benefit the escrowed funds were held, or what specific law or laws were violated with respect to such escrow. Rather, the Counterclaim vaguely contends only that certain accounts were "opened for the purpose of holding escrows under Maryland law…." Counterclaim ¶ 50.

---

[6] To the extent that Haese's DWPA allegations rest upon claimed violation of Delaware's Prompt Pay Statute applicable to general contractors, 6 *Del. C*. §§ 3501-3509, he fails to allege a violation of the law. The Prompt Pay Statute applies only with respect to funds that have been received by a contractor that owes payment to persons or entities that furnished material or labor for the construction of a building. 6 *Del. C*. § 3502. Section 3504 of the statute states that failure to pay over funds on a lawful claim within thirty days of receipt by the contractor constitutes "prima facie evidence of the payment, use or appropriation of such trust moneys or funds by the contractor" in violation of the statute. 6 *Del. C*. § 3504. The Counterclaim alleges no facts to support a violation of the statute, or even that Haese reasonably believed that Insight Homes violated the statute. The origins of the Prompt Pay Statute involved protecting property owners from conflicting claims of liability from a principal contractor and subcontractors. *See State v. Pierson*, 86 A.2d 559, 560-561 (Del. Super. Ct. 1952). Here, there is no allegation that any subcontractor was not ultimately paid, or that any owner was subjected to a claim of double liability. Haese's obscure reference to the Prompt Pay Statute is unavailing.

Haese's contention that Insight Homes improperly accessed and misappropriated from escrow accounts is somewhat closer to the definition of a "violation" under the DWPA than the other asserted misconduct referred to in his Counterclaim. However, he fails to support his contention with well-pled allegations of fact. The escrow accounts are described in only the vaguest of terms, as is Haese's purported complaint about the depletion of such accounts. Critically, Haese identifies no law that he contends was violated relative to the escrow accounts. To the extent that Haese contends accessing the escrow accounts violated "Maryland law" (the only law he identifies in connection with his claims concerning escrows, *see* Counterclaim ¶ 50), a reported violation of Maryland law would not give rise to a proper claim under the DWPA, which by its terms requires violation of laws, rules, regulations or related standards existing ",,,under the laws of *this State*, a political subdivision of this State, or the United States…." 19 *Del. C.* § 1702(6)(b) (emphasis added). "This State" refers to Delaware, not Maryland. Even if the Counterclaim alleged a violation of Maryland law, a violation of Maryland law cannot serve as the predicate violation of the DWPA.

To summarize, Haese's Counterclaim fails to allege a "violation" under the DWPA, or even to allege circumstances that would support a claim that Haese reasonably believed that Insight Homes had committed a violation. For that reason, the Counterclaim should be dismissed.

II.    THE COUNTERCLAIM FAILS TO ALLEGE CONSTRUCTIVE DISCHARGE, THREATS OR DISCRIMINATORY TREATMENT OF HAESE BY INSIGHT HOMES THAT WERE PRIMARILY CAUSED BY HAESE'S ALLEGED WHISTLEBLOWING ACTIVITIES

In order to state a claim under the DWPA, the Counterclaim must include factual allegations that Haese suffered an adverse employment action in the form of a discharge, threats or discrimination in the terms of employment. The Counterclaim fails to adequately allege such adverse employment action.

Haese alleges that Insight Homes "violated the DWPA, when it constructively discharged, threatened, and otherwise discriminated against Haese regarding the terms, conditions, and privileges of his employment because he reported and refused to assist in violations as defined in the DWPA." Counterclaim ¶ 58. This conclusory statement cannot overcome the fact that the Counterclaim, fairly read, does not allege any significant adverse employment action, and most certainly does not allege that the "primary basis" for any such action was Haese's alleged "whistleblowing" activities.

Haese's effort to contend that he was "constructively discharged" by Insight Homes fails as a matter of law. To establish a constructive discharge, the complaining party must allege "intolerable" work conditions that resulted from reporting a violation. *See Smith v. Del. State Univ.*, 47 A.3d 472, 478 (Del. 2012). Haese comes nowhere near meeting such a standard. Clearly there are no allegations in the Counterclaim from which the Court could infer that Haese's work conditions were "intolerable". Indeed, the admitted fact that Haese continued working with Insight Homes as a consultant beyond the date of his July 2018 resignation as CFO refutes any notion that Haese was subjected to "intolerable" treatment due to his alleged reporting of violations of law. *See* Complaint ¶ 13, and Exhibit C; Answer and Counterclaim ¶ 13.

Nor does the Counterclaim include any allegation of fact from which it could be inferred that Haese was "threatened" in any way for reporting an alleged violation of law. The Counterclaim includes no allegation that Haese's compensation was changed or that he was disciplined in any way.

The only claims of adverse employment action found in the Counterclaim are limited to Haese's contentions that: (a) Insight Homes hired a different employee to take over certain financial functions, (b) Insight Homes' CEO informed Haese that he would be directed to focus

on specific matters (all within the Job Description appended to his Employment Agreement), and (c) Haese's access to certain unspecified "computer records" was limited. *See* Counterclaim ¶¶ 52-54. These allegations do not support a claim of violation of the DWPA.

The plain terms of Haese's Employment Agreement allowed Insight Homes to assign him duties. The duties that Haese was instructed to focus on – "land deals and land entitlements, as well as banker, bonding, and equity relations" (Counterclaim ¶ 54) – were all core requirements of his CFO position. *See* Employment Agreement, Attachment A §§ (I)(A), (II)(C). Insight Homes had the authority to direct Haese concerning which of the numerous functions in his Job Description he should focus his attention on.

Finally, even if Haese has adequately alleged that the trivial adjustments to his CFO duties amount to actionable and discriminatory employment actions, he has not fairly alleged facts from which the Court could infer that Haese's alleged reporting of violations constitute the "primary basis" for these employment actions, as required by the DWPA. 19 *Del. C.* § 1708. Haese alleges only that he was told to focus on certain aspects of his duties around the same time that he allegedly complained about his lack of access to certain (unspecified) "computer reports." Counterclaim ¶¶ 53-54. There is simply no allegation in the Counterclaim of any causal connection between Haese's alleged complaints about violations and the re-focusing of his CFO duties. *See Golod v. Bank of America Corp.*, 403 F. App'x 699, 703 (3d Cir. 2010) (upholding dismissal of retaliation claims where plaintiff's claims of retaliation were conclusory and not supported by well-pled allegations of fact); *Drummond v. Amazon.com.DEDC, LLC*, 2018 WL 5629811, at *6 (D. Del. Oct. 31, 2018) (conclusory allegations of adverse employment action based on discrimination insufficient to withstand motion to dismiss under Rule 12(b)(6)).

The Counterclaim fails to state a claim upon which relief can be based because it fails to allege any actionable adverse employment action taken by Insight Homes, and fails to allege that any "whistleblowing" complaints by Haese were the "primary basis" for any adverse employment action.

CONCLUSION

Based upon the arguments set forth above, Plaintiff-Counterclaim Defendant 36 Builders, Inc., doing business as Insight Homes, respectfully requests that the Counterclaim be dismissed in its entirety and with prejudice.

FAEGRE DRINKER BIDDLE & REATH LLP

/s/ *Joseph C. Schoell*
Joseph C. Schoell (Del. Bar No. 3133)
222 Delaware Avenue, Suite 1410
Wilmington, Delaware 19801
Tel: (302) 467-4200
Email: joseph.schoell@faegredrinker.com

*Attorneys for Plaintiffs 36 Builders, Inc.,*
*doing business as Insight Homes, and*
*Insight Land Company, LLC*

January 8, 2021

ACTIVE.125804142.02

## CERTIFICATE OF SERVICE

I, Joseph C. Schoell, hereby certify that on January 8, 2021, I caused a copy of the

attached document to be served upon the following counsel of record via CM/ECF:

Stephen P. Norman,Esq,
The Norman Law Firm
30838 Vines Creek Road; Unit 3
Dagsboro, DE  19939

_/s/ Joseph C. Schoell_____
Joseph C. Schoell (No. 3133)

January 8, 2021