# IN THE UNITED STATES DISTIRCT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| 36 BUILDERS, INC., a Delaware corporation, doing business as INSIGHT HOMES, and INSIGHT LAND COMPANY, LLC, a Delaware limited liability company, <br><br>　　　　　　Plaintiffs, <br><br>　　v. <br><br>JACK HUTCHINS HAESE, <br><br>　　　　　　Defendant. | C.A. No. 20-cv-1669-MN |

## DEFENDANT'S ANSWERING BRIEF IN OPPOSITION
## TO PLAINTIFF'S MOTION TO DISMISS COUNTERCLAIM

STEPHEN P. NORMAN, Esquire, Bar No. 4620
30838 Vines Creek Road, Unit 3
Dagsboro, DE 19939
Phone: (302) 537-3788
Email: snorman@thenormanlawfirm.com
*Attorney for Defendant*, Jack Hutchins Haese

**January 21, 2021**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................... iii

NATURE AND STAGE OF THE PROCEEDINGS ................................................................... 1

SUMMARY OF ARGUMENT ................................................................................................. 1

STATEMENT OF FACTS ........................................................................................................ 1

ARGUMENT ............................................................................................................................ 4

    DEFENDANT'S COUNTERCLAIM STATES A CLAIM FOR RELIEF UNDER THE DWPA AND IS NOT SUBJECT TO DISMISSAL UNDER FED. R. CIV. P. 12(b)(6) ........................ 4

        I.   THE COUNTERCLAIM SUFFICIENTLY ALLEGES A PREDICATE VIOLATION UNDER THE DWPA ................................................................................................ 6

        II.  THE COUNTERCLAIM SUFFICIENTLY ALLEGES CONSTRUCTIVE DISCHARGE, THREATS, OR DISCRIMINATORY TREATMENT OF HAESE BY PLAINTIFF THAT WERE CAUSED BY HAESE'S WHISTLEBLOWER ACTIVITIES 10

CONCLUSION ....................................................................................................................... 13

# TABLE OF AUTHORITIES

**Cases**

*Astrazeneca AB v. Dr. Reddy's Laboratories*, 209 F. Supp. 3d 744 (D. Del. 2016) ........................ 5
*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ................................................................................ 5
*Chance v. Kraft Heinz Foods Co.*, No. CV K18C-01-056 NEP, 2018 WL 6655670 (Del. Super. Ct. Dec. 17, 2018) ................................................................................................................. 7, 8, 9, 10
*Connelly v. Lane Const. Corp.*, 809 F.3d 780 (3d Cir. 2016) .............................................................. 4
*Davis v. Abington Mem'l Hosp.*, 765 F.3d at 241 ............................................................................... 11
*Foman v. Davis*, 371 U.S. 178 (1962) ................................................................................................. 12
*Johnson v. City of Shelby, Miss.*, 574 U.S. 10 (2014) ................................................................. 5, 11
*LKQ Corp. v. United States Dep't of Homeland Security*, 369 F. Supp. 3d 577 (D. Del. 2019) .... 5
*Mid-American Salt, LLC v. Morris Cty. Coop. Pricing Council*, 964 F.3d 218 (3d Cir. 2020) ..... 5
*Nederland Shipping Corp. v. United States* ......................................................................................... 5
*Pittsburgh Mack Sales & Serv., Inc. v. Int'l Union of Operating Engineers, Local Union No. 66*, 580 F.3d 185 (3d Cir. 2009) ................................................................................................. 5, 11
*Pratt v. M & T Bank Corp.*, 230 F. Supp. 3d 343 (D. Del. 2017) .................................................. 7, 8
*Smith v. Delaware State University*, 47 A.3d 472 (Del. 2012) ......................................................... 11
*Travelers Indem. Co. v. Dammann & Co., Inc.*, 515 F.3d 238 (3d Cir. 2010) ............................... 12
*United States ex rel. Customs Fraud Investigations, LLC v. Victaulic Co.*, 839 F.3d 242 (3d Cir. 2016) ......................................................................................................................................... 12

**Statutes**

19 Del. C. § 1702 .................................................................................................................................. 7, 9
19 Del. C. § 1703 .................................................................................................................................. 6, 10
19 Del. C. § 1708 .................................................................................................................................. 11, 12
19 Del. C. §§ 1701–1708 ....................................................................................................................... 1
6 Del. C. § 3504 ..................................................................................................................................... 8
Fed. R. Civ. P. 12(b)(6) ...................................................................................................................... 1, 8
Fed. R. Civ. P. 15(a)(2) ......................................................................................................................... 12
Fed. R. Civ. P. 8(A)(2) .......................................................................................................................... 5

## NATURE AND STAGE OF THE PROCEEDINGS

Plaintiff, 36 Builders, Inc., d/b/a Insight Homes ("Plaintiff" or "Insight Homes") has set forth the nature and stage of the proceedings in its Opening Brief. Defendant, Jack Hutchins Haese ("Defendant" or "Haese") has filed this Answering Brief in Opposition to Plaintiff's Motion to Dismiss Counterclaim for failure to state a claim filed pursuant to Fed. R. Civ. P. 12(b)(6).

## SUMMARY OF ARGUMENT

Haese's Counterclaim adequately alleges sufficient facts to state a claim upon which relief can be granted and is not subject to dismissal under the standard applicable to Fed. R. Civ. P. 12(b)(6).

1. Haese sufficiently alleges one or more "violations" within the scope of the DWPA; and

2. Haese adequately alleges facts that Plaintiff took actionable adverse employment action against him because of his Whistleblower activity.

## STATEMENT OF FACTS

Defendant, Jack Hutchins Haese ("Defendant" or "Haese"), has asserted a Counterclaim against Plaintiff, 36 Builders, Inc. d/b/a Insight Homes ("Plaintiff" or "Insight Homes") under the Delaware Whistleblowers' Protection Act ("DWPA"), 19 Del. C. §§ 1701–1708 (D.I. 3, ¶ 42–59). Plaintiff has filed a Motion to Dismiss for failure to state a claim, pursuant to Fed. R. Civ. P. 12(b)(6) (D.I. 4), and an Opening Brief in support (D.I. 5). The facts pertaining to the Counterclaim are set out in Haese's Counterclaim.

While Plaintiff has set forth the basic facts in its Opening Brief, several of its assertions are untrue. For example, contrary to Plaintiff's description of Haese's Employment Contract to include having authority for managing land contracting activities (Opening Brief at 4), his responsibilities in the land development area were only financial in nature.

Throughout Plaintiff's Statement of Facts in its Opening Brief, rather than focusing on the facts alleged by Haese in his Counterclaim, Plaintiff sets forth various allegations not set forth in the Counterclaim. None of these "omissions", however, is necessary to state the claim raised in the Counterclaim. Moreover, as is typical, more facts will be provided following discovery, which will further establish the claim raised. Some of these so-called omissions, however, are addressed below.

In referring to Haese's allegations in his Counterclaim concerning his arrangement of financing, Plaintiff asserts that the Counterclaim "fails to describe at all the 'financing' that Haese has 'arranged'." (Opening Brief at 4). While such facts are not necessary to his Counterclaim, Haese can easily list the financing he arranged, and the documentation will be provided at discovery through document requests in Interrogatories. Further, it was after many of the loans arranged by Haese were closed that his Manager, Robert M. Lisle, started false reporting. The more blatant false reporting did not start until after Paula Sachs was hired by Plaintiff as Chief Financial Officer and Director of Financial Reporting.

Plaintiff asserts that the Counterclaim "does not identify any specific trade creditor, or the particular amount or amounts that were in arrears as of the fall of 2017 (except to contend it was in the millions)." (Opening Brief at 5). Haese's allegations will be established through discovery of Plaintiff's financial statements, payables, reports, etc., and through the testimony of Amy Cavallini, the Comptroller for Plaintiff.

Plaintiff asserts that the Counterclaim "does not allege that Insight homes' failure to remain current or trade receivables was materially inconsistent with or a substantial deviation from any applicable accounting standard or law." (Opening Brief at 5). The violation of Delaware law of falsely alleging that all of the payables on a specific house were "paid in full" by sworn statement, will be established by Haese.

Plaintiff asserts that "Haese does not allege that the purported contact from the Delaware Attorney General's Office had anything to do with his job responsibilities or that he made any complaint … [and] does not allege anything concerning the nature of the 'plea agreement' or the 'false and misleading advertising' that are the subject of his allegations." (Opening Brief at 5). If the criminal case is not sealed, Haese will obtain more information from the State about that matter. Moreover, that matter, which involved more reckless and fraudulent activity, was potentially damaging to Haese's reputation and responsibility as Chief Financial Officer, particularly by Plaintiff asking that he just put up with such activity. Thus, such activity did affect Haese's job.

Plaintiff asserts that "Haese nowhere in his Counterclaim asserts that the purported 'false and misleading advertising' referenced in the Counterclaim related to financial management or accounting standards" (Opening Brief at 6). The AICPA (American Institute of Certified Public Accountants) Code of Conduct, however, establishes standards for auditor independence, integrity and objectivity, and can be violated by unethical or illegal conduct by an employer that is not necessarily directly related to financial management or accounting standards, per se, but still affects such areas.

Plaintiff asserts that the Counterclaim does not allege who specifically "introduced" Paula Sachs as the new Chief Financial Officer and Director of Financial Reporting for Plaintiff (Opening Brief at 6), but Haese will show that Lisle introduced her by an email which will be

obtained in discovery. While the Counterclaim fails to allege a specific date of the hiring of Paula Sachs (Opening Brief at 7), this date will be obtained in discovery, and is believed to be in late February of 2018.

In reference to the Counterclaim failing to specify what "supervisors" Haese confronted about the issues he raised about Plaintiff's violators (Opening Brief at 7), Haese will show he reported his concerns to Lisle and Sachs.

Finally, in Plaintiff's last paragraph in its Statement of Facts, Plaintiff asserts that "the Counterclaim lacks even conclusory allegations of fact that would support any inference that Haese was 'constructively discharged' or 'threatened in any way'" by Plaintiff. (Opening Brief at 8). It is clear, however, that Haese's livelihood as a CFO was threatened by being asked to be complicit in violations of law, such as false and misleading financial reporting, and the corporation's engaging in reckless advertising techniques. Such conduct could destroy Haese's personal relationship with his banking and investor contacts, upon which relationship their trust in his effectiveness as a CFO and a professional was based. In addition to other threatening and discriminatory conduct by Plaintiff, as outlined in the Counterclaim, the wrongful conduct by Plaintiff, reported by Haese, thus forced Haese to resign and constituted threatening and discriminatory conduct against Haese.

**ARGUMENT**

DEFENDANT'S COUNTERCLAIM STATES A CLAIM FOR RELIEF UNDER THE DWPA AND IS NOT SUBJECT TO DISMISSAL UNDER FED. R. CIV. P. 12(b)(6)

When considering a Rule 12(b)(6) motion to dismiss, the court must accept as true all factual allegations in the complaint and view in the light most favorable to the plaintiff. *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 790–91 (3d Cir. 2016); *Nederland Shipping Corp. v. United*

4

*States*. A complaint may not be dismissed merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits. *Pittsburgh Mack Sales & Serv., Inc. v. Int'l Union of Operating Engineers, Local Union No. 66*, 580 F.3d 185, 192 (3d Cir. 2009). A 12(b)(6) motion should be granted only if, accepting as true the facts alleged and all reasonable inferences that can be drawn therefrom, there is no reasonable reading upon which the plaintiff may be entitled to relief. *Mid-American Salt, LLC v. Morris County Cooperative Pricing Council*, 964 F.3d 218, 226 (3d Cir. 2020); *see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007). Detailed factual allegations are not required, although it must provide more that labels and conclusions. *Davis v. Abington Mem'l Hosp.*, 765 F.3d 236, 241 (3d Cir. 2014). A complaint may not be dismissed "for imperfect statement of the legal theory supporting the claim." *See Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 11 (2014).

To state a claim upon which relief must be granted, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(A)(2). Detailed factual allegations are not required, but the complaint must set forth enough factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The issue on a motion to dismiss for failure to state a claim is not whether the plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. *LKQ Corp. v. United States Department of Homeland Security*, 369 F. Supp. 3d 577, 583 (D. Del. 2019). This does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element. *Astrazeneca AB v. Dr. Reddy's Laboratories*, 209 F. Supp. 3d 744, 752 (D. Del. 2016); *see LKQ Corp. v. United States Department of Homeland Security*, 369 F. Supp. 3d at 583.

Under the foregoing standard, Defendant's Counterclaim is clearly sufficient to state a claim under the DWPA, and Plaintiff's argument to the contrary is without merit.

### I. THE COUNTERCLAIM SUFFICIENTLY ALLEGES A PREDICATE VIOLATION UNDER THE DWPA

Contrary to Plaintiff's contention, Haese's Counterclaim sufficiently alleges violations within the scope of the DWPA. Section 1703 of the DWPA provides as follows:

> An employer shall not discharge, threaten, or otherwise discriminate against an employee regarding the employee's compensation, terms, conditions, location, or privileges of employment:
>
> (1) Because the employee, or a person acting on behalf of the employee, reports or is about to report to a public body, verbally or in writing, a violation which the employee knows or reasonably believes has occurred or is about to occur, unless the employee knows or has reason to know that the report is false; or
>
> (2) Because an employee participates or is requested by a public body to participate in an investigation, hearing, or inquiry held by that public body, or a court action, in connection with a violation as defined in this chapter; or
>
> (3) <u>Because an employee refuses to commit or assist in the commission of a violation, as defined in this chapter</u>; or
>
> (4) Because the employee <u>reports verbally or in writing to the employer or to the employee's supervisor a violation, which the employee knows or reasonably believes has occurred or is about to occur</u>, unless the employee knows or has reason to know that the report is false. Provided, however that if the report is verbally made, the employee must establish by clear and convincing evidence that such report was made; or
>
> (5) Because an employee reports or is about to report to a public body, to the employer or the employee's supervisor, verbally or in writing any noncompliance or an infraction which the employee knows or reasonably believes has occurred or is about to occur, of Chapter 80 of Title 15 unless the employee knows or has reason to believe the report is false; or participates or is requested to participate in an investigation, hearing, trial or inquiry, of a person or entity other than employee, regarding noncompliance or an infraction of Chapter 80 of Title 15; or refuses to participate or assist in the noncompliance or an infraction of Chapter 80 of Title 15.

19 Del. C. § 1703 (emphasis added). "The DWPA prohibits an employer from discharging or otherwise discriminating against an employee for reporting a 'violation' to the employer or to the

6

employer's supervisor, which he/she 'knows or reasonably believes has occurred or is about to occur'." *Chance v. Kraft Heinz Foods Co.*, No. CV K18C-01-056 NEP, 2018 WL 6655670, at *10 (Del. Super. Ct. Dec. 17, 2018) (footnote omitted; quoting 19 Del. C. §§ 1703(1) and (4).

> The elements of a prima facie case of a violation of the DWPA are as follows:
>
> (1) the employee engaged in a protected whistleblowing activity; (2) the accused official knew of the protected activity; (3) the employee suffered an adverse employment action; and (4) there is a casual connection between the whistleblowing activity and the adverse action.

*Chance*, 2018 WL 6655670, at *10 (footnotes omitted).

> "Violation" is defined in 19 Del. C. § 1702(6) as follows:
>
> (6) "Violation" means an act or omission by an employer, or an agent thereof, that is:
>
>> a. Materially inconsistent with, and a serious deviation from, standards implemented pursuant to a law, rule, or regulation promulgated under the laws of this State, a political subdivision of this State, or the United States, to protect employees or other persons from health, safety, or environmental hazards while on the employer's premises or elsewhere; or
>>
>> b. Materially inconsistent with, and a serious deviation from, financial management or accounting standards implemented pursuant to a rule or regulation promulgated by the employer of a law, rule, or regulation promulgated under the laws of this State, a political subdivision of this State, or the United States, to <u>protect any person from fraud, deceit, or misappropriation of public or private funds or assets</u> under the control of the employer.

(emphasis added). As set forth in § 1702(6)(b), a "violation does not only mean a violation of a law, rule, or regulation, but also a violation of "financial management or accounting standard." As explained in *Pratt v. M & T Bank Corp.*, 230 F. Supp. 3d 343, 346–47 (D. Del. 2017), such financial management standards refer to "regulations and rules that describe how a business should manage its finances." "For example," as the court in *Pratt* notes, "the federal government has 'financial management standards' that apply to recipients of federal grants." *Id*. at 347. The court continued: "Accounting standards are similar, although focused or the measurement and

categorization of the business's finances. The U.S. Generally Accepted Accounting Principles are an example of accounting standards." *Id*.

Here, Plaintiff first contends that the "violations" alleged in Haese's Counterclaim do not fall within the scope of a claim under the DWPA as set forth above. Although acknowledging that the Counterclaim specifically alleges that Plaintiff violated the Delaware Prompt Pay Statute, 6 Del. C. § 3504, Plaintiff contends that the Counterclaim lacks an allegation as to specific amounts owed by Plaintiff or to whom owed. Such specifics, however, are not required to state a claim. In *Chance*, the defendant moved for dismissal on the ground that the plaintiff failed to plead facts showing which law, rule, or regulation he believed had been violated in connection with the unsafe condition of the railroad ties in the defendant's railroad yard. 2018 WL 6655670, at *1, 10. The court held that although the plaintiff did not "identify any concrete 'violation' of the law within the meaning of the DWPA", that was no basis for dismissal at the early stage of the action "when Plaintiff has alleged that the condition of the rails violates the UFC [United Facilities Criteria] standards and when Plaintiff has not had the opportunity to conduct discovery or support his allegation as to whether the condition of the rail ties did, in fact, constitute a violation under state or federal law." *Id*. at *11. As the court stated, "[p]laintiff's allegations must be accepted as true until such time as the factual second is more developed." *Id*.

So, too, here, as discussed in the Statement of Facts, Haese will more fully set out the facts through discovery, so as to more specifically establish the violations. At this early stage, however, such specifics are not required to sufficiently state a claim for purposes of Rule 12(b)(6). Moreover, a violation of 6 Del. C. § 3504 clearly involves "financial management or accounting standards implemented…to protect any person from fraud, deceit, or misappropriation of public

8

or private funds or assets under the control of the employer." 19 Del. C. § 1702(6)(b). Therefore, such violation falls within the scope of the DWPA.

Similarly, the Counterclaim alleges several other "violations" under the DWPA which Haese reported to his employer or to his supervisor. These include actions by Plaintiff involving the depletion of balances in the Maryland Escrow accounts and the moving of the cash from those accounts into the general operating account, which Haese reported was a violation of law (D.I. 3 ¶ 51). While this latter alleged violation involved Maryland accounts, the alleged violation of law was not necessarily only one of Maryland law, but could also be a violation of Delaware or federal law. In addition, Haese alleges that Defendant violated Delaware law pertaining to false and misleading advertising, and that, in fact, Defendant admitted guilt pursuant to a plea agreement and paid a substantial fine. (D.I. 3 ¶ 49). As briefly discussed in the Statement of Facts, the false and misleading advertising can also involve financial management or accounting standards implemented to protect persons from fraud, deceit, or misappropriation of funds or assets under the control of the employer, as set forth in 19 Del. C. § 1702(6)(b).

The Counterclaim further alleges that Haese became "increasingly concerned over the financial position of [Defendant] and related entities which were carrying millions in past due payables, some exceeding 90 days. Haese and the accounting staff with which he worked daily endured countless phone calls from trade payable accounts, asking for the accounts to be brough current." (D.I. 3 ¶ 47). On their face, these allegations also pertain to violations defined in 19 Del. C. § 1702(6)(b).

As the holding in *Chance* makes clear, any failure to more specifically identify particular laws, rules, or regulations that were allegedly violated is not a basis for dismissal. As in *Chance*, Haese has made sufficient allegations of "violations" as defined in 19 Del. C. § 1702 to overcome

a motion to dismiss. As in *Chance*, Haese has not yet had the opportunity to conduct discovery and further support his allegations of "violations", and thus should not be required to more specifically identify a specific statute, rule, or regulation at this early stage of the proceeding. *See Chance*, 2018 WL 6655670, at *11.

Therefore, Plaintiff's first basis for dismissal is without merit.

### II. THE COUNTERCLAIM SUFFICIENTLY ALLEGES CONSTRUCTIVE DISCHARGE, THREATS, OR DISCRIMINATORY TREATMENT OF HAESE BY PLAINTIFF THAT WERE CAUSED BY HAESE'S WHISTLEBLOWER ACTIVITIES

Plaintiff contends that the Counterclaim should be dismissed because it fails to adequately allege the requisite adverse employment action or that Haese's reporting of violations constitute the "primary basis" for the adverse employment actions. These conditions are without merit.

The DWPA prohibits the employer from discharging, threatening, or otherwise discriminating against an employee regarding the employee's compensation, terms, conditions, location, or privileges of employment, because of the employee's Whistleblower activity. 19 Del. C. § 1703. Haese's Counterclaim specifically alleges that he suffered the foregoing adverse consequences because of his Whistleblower activity. The Counterclaim alleges that shortly after Haese informed his employer (or a supervisor of Haese) of alleged violations, Paula Sachs, a friend of Lisle's, was introduced as the new Chief Financial Officer and Director of Financial Reporting for Defendant. (D.I. 3 ¶ 52). Haese then was deprived of access to any of the computer records despite his responsibility for various accounts under his Employment Agreement. (D.I. 3 ¶ 52). After confronting Lisle about this, Haese was instructed to focus on other matters, which diminished his duties. (D.I. 3 ¶'s 54–55). Then, Haese again confronted his supervisors with issues pertaining to violations and refused to sign further closing certifications he knew to be false. (D.I. 3 ¶ 55). Finally, the Counterclaim alleges that "[i]n light of his concerns over repeated violations

10

of law and his diminished duties upon refusal to cooperate in such violations, Haese resigned…" (D.I. 3 ¶ 56).

An employee who is constructively discharged can pursue a claim under the DWPA, on the same basis as if he had been formally discharged. *Smith v. Delaware State University*, 47 A.3d 472, 477 (Del. 2012). To prevail on a claim of constructive discharge, employee must show working conditions so intolerable that a reasonable person would have felt compelled to resign. *Id*. Here, Haese alleges that his duties were diminished after his protected Whistleblowing activities, that he was denied access to any computer records despite his responsibility for various accounts, that he had to refuse to cooperate in the wrongdoing, and that in light of theses circumstances and violations, he was forced to resign. While Haese does not specifically use the term "intolerable conditions", he alleges sufficient facts for a claim of constructive discharge. Further, his allegations of diminished responsibilities and refusal to cooperate in wrongdoing, are sufficient to allege being threated or otherwise discriminated against under the DWPA. A complaint may not be dismissed for imperfect statement of the legal theory supporting the Claim. *See Johnson v. City of Shelby*, 574 U.S. at 11. Also, again, detailed factual allegations are not required, *Davis v. Abington Mem'l Hosp.*, 765 F.3d at 241, and a complaint may not be dismissed merely because it appears unlikely that the plaintiff will ultimately prevail on the merits. *Pittsburgh Mack Sales & Services, Inc.*, 580 F.2d at 192. Thus, Haese has sufficiently alleged adverse employment consequences under the DWPA, including constructive discharge.

Plaintiff lastly contends that Haese has not fairly alleged facts from which the Court could infer that Haese's Whistleblower activities constituted the "primary basis" for Plaintiff's employment actions. Pursuant to 19 Del. C. § 1708 the employee has the "burden of proof…to show that the primary basis for the discharge, threats, or discrimination alleged to be in violation

of this chapter was that the employee undertook an act protected pursuant to § 1703 of this title." As § 1708 expressly states, this section pertains to "burden of proof", not to the sufficiency of the allegations. The Counterclaim sufficiently alleges that Haese was constructively discharged, threatened, and otherwise discriminated against because of his protected Whistleblowing activities. It will be his burden of proof at trial to establish that his protected activities were the primary basis for Plaintiff's discharge, threats, or discrimination. At this stage, however, Haese has sufficiently stated a claim under the DWPA. Therefore, Plaintiff's motion to dismiss should be denied.

Finally, should the court for some reason deem the Counterclaim insufficient in any respect, Haese requests leave to amend. It is well settled that if a complaint is vulnerable to 12(b)(6) dismissal, a district court must permit a curative amendment, unless an amendment would be inequitable or futile. *Travelers Indem. Co. v. Dammann & Co., Inc.*, 515 F.3d 238, 256 n. 14 (3d Cir. 2010). Leave to amend should be granted freely in the absence of undue delay or bad faith as long as the amendment would not be futile, and the opposing party would not suffer undue prejudice. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *United States ex rel. Customs Fraud Investigations, LLC v. Victaulic Co.*, 839 F.3d 242, 249–52 (3d Cir. 2016); *see* Fed. R. Civ. P. 15(a)(2). Although the grant or denial of an opportunity to amend is within the discretion of the District Court, that discretion is abused if it is exercised without giving the plaintiff sufficient opportunity to make his case. *United States ex rel. Customs Fraud Investigations, LLC v. Victaulic Co.*, 839 F.3d at 249. In accordance with the principles, the court should grant Plaintiff leave to amend should it, for some reason, find the Counterclaim difficult. Plaintiff, however, contends that the Counterclaim adequately alleges facts sufficient to state a claim under the DWPA.

## CONCLUSION

For all the foregoing reasons, Defendant requests that Plaintiff's Motion to Dismiss be denied. In the alternative, should the Court for some reason deem the Counterclaim deficient, it should grant Defendant leave to amend.

Respectfully submitted,

_____
STEPHEN P. NORMAN, Esquire, Bar No. 4620
30838 Vines Creek Road, Unit 3
Dagsboro, DE 19939
Phone: (302) 537-3788
Email: snorman@thenormanlawfirm.com
*Attorney for Defendant*

January 21, 2021

## **CERTIFICATE OF SERVICE**

I, Stephen P. Norman, hereby certify that on January 8, 2021, I caused a copy of the attached document to be served upon the following counsel of record via CM/ECF:

Joseph C. Schoell
FAEGRE DRINKER BIDDLE & REATH LLP
222 Delaware Avenue; Ste. 1410
Wilmington, DE  19801

                                                      */s/ Stephen P. Norman*
                                                      Stephen P. Norman (No. 4620)

**January 21, 2021**