# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| 36 BUILDERS, INC., a Delaware corporation, doing business as INSIGHT HOMES, and INSIGHT LAND COMPANY, LLC, a Delaware limited liability company, | ) ) ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) |
| JACK HUTCHINS HAESE, | ) ) |
| Defendant. | ) |

C.A. No. 20-cv-1669-MN

## PLAINTIFF, 36 BUILDERS, INC., d/b/a INSIGHT HOMES' REPLY BRIEF IN SUPPORT OF ITS <u>MOTION TO DISMISS COUNTERCLAIM</u>

FAEGRE DRINKER BIDDLE & REATH LLP
Joseph C. Schoell (Del. Bar No. 3133)
222 Delaware Avenue, Suite 1410
Wilmington, Delaware 19801
Tel: (302) 467-4200
Email: joseph.schoell@faegredrinker.com

*Attorneys for Plaintiffs 36 Builders, Inc., doing business as Insight Homes, and Insight Land Company, LLC*

January 28, 2021

TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................ ii
INTRODUCTION ..............................................................................................................1
RESPONSE TO DEFENDANT'S "STATEMENT OF FACTS"................................................2
ARGUMENT......................................................................................................................6
    I.    THE COUNTERCLAIM FAILS TO ALLEGE A PREDICATE VIOLATION OF THE DWPA..................................................................6
    II.   THE COUNTERCLAIM FAILS TO ALLEGE THAT ANY PURPORTED "WHISTLEBLOWING" ACTIVITY WAS THE PRIMARY BASIS FOR AN ADVERSE EMPLOYMENT ACTION AGAINST DEFENDANT ........................................................................8
    III.  DEFENDANT'S REQUEST FOR LEAVE TO AMEND HIS COUNTERCLAIM SHOULD BE DENIED .......................................9
CONCLUSION.................................................................................................................10

# TABLE OF AUTHORITIES

Page(s)

Cases

*Ashcroft v. Iqbal*,
    556 U.S. 622 (2009) ...................................................................................................7

*Bell Atlantic v. Twombly*,
    550 U.S. 544 (2007) ...................................................................................................7

*Cambium Ltd. v. Trilantic Capital Partners III L.P.*,
    2012 WL 172844 (Del. Jan. 20, 2012),
    *dispositon reported at* 36 A.3d 348 (Table) ............................................................7

*Central Mortg. Co. v. Morgan Stanley Mortg. Capital Holdings LLC*,
    27 A.3d 531 (Del. 2011) ............................................................................................7

*Chance v. Kraft Heinz Food Co.*,
    2018 WL 6655670 (Del. Super. Ct. Dec. 17, 2018) ..................................................7

*Curlett v. Madison Indus. Servs. Team, Ltd.*,
    863 F. Supp. 2d 357 (D. Del. 2012) ..........................................................................8

*Huss v. Green Spring Health Servs., Inc.*,
    18 F. Supp. 2d 400 (D. Del. 1998) ............................................................................9

*LG Electronics U.S.A., Inc. v. Whirlpool Corp.*,
    2011 WL 4543886 (D. Del. Sept. 29, 2011) .............................................................4

*Pinto v. Bricklayers & Allied Craftworkers Local 1*,
    2019 WL 859307 (E.D. Pa. Feb. 22, 2019) ..............................................................2

*Ramsgate Court Townhome Ass'n v. West Chester Borough*,
    313 F.3d 157 (3d Cir. 2002) .....................................................................................9

*Smith v. Univ. of Delaware*,
    47 A.3d 472 (Del. 2012) ............................................................................................8

*Southmark Prime Plus, LP v. Falzone*,
    776 F. Supp. 888 (D. Del. 1991) ...............................................................................4

*State v. Pierson*,
    86 A.2d 550 (Del. Super. Ct. 1952) ..........................................................................6

*United States v. Haese*,
    162 F.3d 359 (5th Cir. 1998), *cert. denied*, 526 U.S. 1138 (1999) ..........................4

Statutes

6 *Del. C.* § 3503 ...................................................................................................................6

6 Del. C. § 3504 ....................................................................................................................6

19 *Del. C.* § 1702(6)(b) .....................................................................................................6, 7

Other Authorities

Fed. R. Civ. P. 15 ..................................................................................................................9

## INTRODUCTION

Pending before the Court is Insight Homes' Motion to Dismiss Haese's Counterclaim.[1] As demonstrated in Insight Homes' Opening Brief in Support of its Motion to Dismiss Counterclaim filed January 8, 2021 (D.I. 5, the "Opening Brief" or "Op. Br."), Haese's Counterclaim provides disjointed and completely conclusory allegations which, taken together, clearly fail to state a claim upon which relief can be granted under Delaware's whistleblower law, the DWPA.

On January 21, 2021, Defendant filed an Answering Brief (D.I. 6, the "Answering Brief" or "Ans. Br.").[2] Haese's Answering Brief fails to excuse or address the Counterclaim's pervasive lack of well-pleaded factual allegations. Instead, it attempts to muddy the waters by throwing in a few more conclusions (rather than supplying the Court with well-pleaded facts). The Counterclaim fails to state a claim upon which relief can be granted, and therefore Insight Homes' Motion to Dismiss should be granted, and the Counterclaim should be dismissed in its entirety.

This is Insight Homes' Reply Brief in Support of its Motion to Dismiss the Counterclaim.

---

[1] Capitalized terms used in this Reply Brief and not otherwise defined have the meanings ascribed in Insight Homes' Opening Brief filed January 8, 2021.

[2] The as-filed Answering Brief is not signed by counsel as required under Section (H)(A) of the Court's Administrative Procedures Governing Filing and Service by Electronic Means (Revised May 2019). Ans. Br. 13. Insight Home assumes that this deficiency was inadvertent.

## RESPONSE TO DEFENDANT'S "STATEMENT OF FACTS"

Haese's Answering Brief introduces new assertions that are nowhere alleged in his Counterclaim, but which are as conclusory and circular as the allegations that Haese actually pleaded. Haese's assertions in his Answering Brief cannot salvage his defective pleading: "It is axiomatic that statements or suggestions in briefs are not a substitute for well pled facts in a complaint." *Pinto v. Bricklayers & Allied Craftworkers Local 1*, 2019 WL 859307, at *3 (E.D. Pa. Feb. 22, 2019) (quoting *Fleury v. U.S. Postal Serv.*, 2001 WL 964147, at *3 n. 5 (E.D. Pa. Aug. 1, 2001)). Although the factual contentions advanced by Haese in his Answering Brief are not pleaded and should be disregarded by the Court, Insight Homes addresses several of Haese's new contentions below.

The Answering Brief's Statement of Facts (pp. 2-4) starts with a contention that "several of the assertions" in the Opening Brief are "untrue." Ans. Br. 2. Haese provides just one purported example, stating that "contrary to Plaintiff's description of Haese's Employment Contract to include having authority for managing land contracting activities (Opening Brief at 4), his responsibilities in the land development area were only financial in nature." Ans. Br. 2. Insight Homes vigorously disputes Haese's assertion that any statement made in its Opening Brief was or is "untrue". The sole example Haese lists – his contention that his "responsibilities in the land development area were only financial in nature" – is belied by the words of the Employment Agreement itself. Haese's job description expressly refers to "land contract administration" as among Haese's job duties and lists a variety of non-financial tasks related to that function (*e.g.*, handling soil and geo-tech reports, corresponding with sellers and their representatives). *See* Compl., Exhibit A at 9 (§ II(C)). The Counterclaim includes no allegation that Haese's duties as to any aspect of his job were limited to purely "financial duties" or that the land administration

2

duties assigned to him by his supervisor were outside of the job duties described in his Employment Agreement.[3]

Next, Haese asserts that he "can easily list" the financing he allegedly "arranged" while the CFO of Insight Homes, without explaining to the Court why his Counterclaim fails to plead any facts concerning that financing. Ans. Br. 2. In the same paragraph, Haese asserts that at some point Insight Homes' CEO Robert M. Lisle "started false reporting." *Id*. The Counterclaim, however, lacks <u>any</u> allegation that Insight Homes or Mr. Lisle made any false report to anyone. It lacks any allegation of even the most basic facts – who, what, where, when or how. The conclusory innuendo of Haese's Answering Brief does nothing to fix the conclusory allegations of his pleading.

Responding to the Opening Brief's pointing out that the Counterclaim makes only passing reference to an inquiry of the Delaware Attorney General's Office related to Insight Homes' advertising, the Answering Brief references a "criminal case" involving the matter. Ans. Br. 3. Haese's statement in this respect is patently improper: Insight Homes has never been subject to a "criminal case" or criminal charges of any kind. If Haese had any involvement in the matter alluded to in his Counterclaim, perhaps he would know that. Haese goes on to state that Insight Homes asked "…that [Haese] just put up with such activity…" that in some way would damage his reputation. Ans. Br. 3. Again, there is no allegation in the Counterclaim that Haese was asked to "just put up with" anything. Haese then references extraneous items from a Code of Conduct

---

[3] Further, as alleged in the Complaint – and admitted by Haese – contemporaneous with his start of employment with Insight Homes in August 2016, Haese, through his affiliate (Sequoia), entered into a Consulting Agreement with Insight Homes, pursuant to which Haese was to provide a variety of services related to land development matters, including the acquisition and development of real estate assets. *See* Complaint ¶ 12; Exhibit C, p. 1 (Recital), § 1; Answer and Counterclaim ¶ 12. These services encompass an array of non-financial responsibilities.

of the American Institute of Certified Public Accountants (also not mentioned in his Counterclaim) without explaining their purported relevance. Ans. Br. 3.[4]

Haese concludes his "Statement of Facts" with another circuitous contention that finds no support in his pleading:

> It is clear, however, that Haese's livelihood as a CFO was threatened by being asked to be complicit in violations of law, such as false and misleading financial reporting and the corporation's engaging in reckless advertising techniques. Such conduct could destroy Haese's personal relationship with his banking and investor contacts, upon which relationship their trust in his effectiveness as a CFO and a professional was based.

Ans. Br. 4.

The sentences quoted above are largely unintelligible. More pertinently, they do not relate at all to the pleading challenged by Insight Homes' Motion to Dismiss: (1) the Counterclaim includes absolutely no allegation of "false and misleading financial reporting"; and (2) the Counterclaim includes absolutely no description of Insight Homes' allegedly "reckless" advertising techniques, much less any contention that Haese was asked to participate in any activity related to such "techniques."[5]

---

[4] The Counterclaim does not allege that Haese is or was a Certified Public Accountant, and to Insight Homes' knowledge, he does not hold that designation. Publicly available databases do not list Haese as holding a CPA designation and therefore his purported concern with the CPA Code of Conduct perplexing.

[5] Moreover, Haese's reference to the purported sanctity of his reputation with the financial and banking community is dubious, given that it is a matter of public record that Haese was convicted of numerous felonies, including conspiracy to commit bank bribery and money laundering. *See United States v. Haese*, 162 F.3d 359 (5th Cir. 1998), *cert. denied*, 526 U.S. 1138 (1999). In deciding a motion to dismiss, this Court may take judicial notice of criminal proceedings involving Haese. *See, e.g., Southmark Prime Plus, LP v. Falzone*, 776 F. Supp. 888, 892-93 (D. Del. 1991); *LG Electronics U.S.A., Inc. v. Whirlpool Corp.*, 2011 WL 4543886, at *3 (D. Del. Sept. 29, 2011).

4

In short, Haese loaded into his Answering Brief a variety of statements that are not pleaded in his Counterclaim and which cannot be relied upon to salvage the conclusory allegations of the Counterclaim.

## ARGUMENT

I. THE COUNTERCLAIM FAILS TO ALLEGE A PREDICATE VIOLATION OF THE DWPA

In its Opening Brief, Insight Homes demonstrated that the Counterclaim fails to allege a predicate violation of law necessary to invoke the DWPA. *See* Op. Br. 11-14. The Counterclaim fails to allege any action by Insight Homes that is materially inconsistent with, and a serious deviation from, financial or accounting standards implemented under a law, rule or regulation designed to protect persons from fraud, deceit or misappropriation. *See* 19 *Del. C.* § 1702(6)(b).

Haese tries to sidestep the deficiencies of the Counterclaim by asserting that Insight Homes "acknowledge[es] that the Counterclaim specifically alleges that Plaintiff violated the Delaware Prompt Pay Statute, 6 Del. C. § 3504." Ans. Br. 8. Insight Homes emphatically rejects Haese's assertion that the Counterclaim alleges a violation of the Prompt Pay Statute, or that the Counterclaim "specifically alleges" anything. *See* Op. Br. 12-13. Haese fails to allege that a single contractor or other creditor of Insight Homes was not paid. While the failure of a builder to timely pay on a contract can give rise to certain inferences under the Prompt Pay Statute (*see* 6 *Del. C.* § 3504), the Counterclaim noticeably fails to allege that <u>any</u> subcontractor, laborer or material provider was not paid for <u>any</u> work on any Insight Homes project.[6] The allegations of the Counterclaim are inadequate.

---

[6] To allege a violation of the Prompt Pay Statute, Haese would need to allege that Insight Homes misappropriated funds that it had actually received and held in trust for a subcontractor or material provider. *See* 6 *Del. C.* § 3503; *see also State v. Pierson*, 86 A.2d 550, 561 (Del. Super. Ct. 1952) (dismissing indictment under statute where claim that general contractor misappropriated funds was not accompanied with allegations that subcontractor went unpaid). A failure to pay within thirty days merely constitutes "evidence" that funds were misappropriated. 6 *Del. C.* § 3504. As noted in Insight Homes' Opening Brief, Haese identifies not a single contractor that went unpaid (or even a single contractor that was not timely paid).

6

As noted in Insight Homes' Opening Brief, the Counterclaim alleges that certain "Maryland Escrow" accounts – supposedly established pursuant to "Maryland law" – were accessed or depleted. Op. Br. 13-14. The Counterclaim identifies <u>no</u> law that was violated (or even allegedly violated) by Insight Homes. In his Answering Brief, Haese tries to rehabilitate his Counterclaim by asserting "[w]hile this latter violation involved Maryland accounts, the alleged violation of law was not necessarily only one of Maryland law, but could also be a violation of Delaware or federal law." Ans. Br. 9. Nowhere does Haese even attempt to identify what "law" he contends was violated or how that law meets the criteria of Section 1702(6)(b) of the DWPA. Haese cannot use vague and conclusory contentions in his brief to redeem the vaguer and even more conclusory allegations of his Counterclaim. The Counterclaim plainly fails to plead any violation related to any "Maryland escrow" accounts.

Haese's attempt to sustain his conclusory allegations in the Counterclaim by comparing this case to *Chance v. Kraft Heinz Food Co.*, 2018 WL 6655670 (Del. Super. Ct. Dec. 17, 2018), also misses the mark. *See* Ans. Br. 8-10. In *Chance*, the Superior Court of Delaware determined that the complaint before it stated a claim, where the plaintiff identified specific conduct that he reasonably believed violated the United Facilities Criteria applicable to food safety. *Id.* at *12. The plaintiff in that case further alleged that he had requested but not received guidance concerning the UFC standards. *Id.* at *11. The Superior Court found his allegations sufficient.[7] In contrast, Haese's Counterclaim lacks any well pleaded allegations concerning the law or standards that he

---

[7] Notably, *Chance* was decided under state law standards that are more lenient than what is required of pleadings in this Court under *Bell Atlantic v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 622 (2009). *See Central Mortg. Co. v. Morgan Stanley Mortg. Capital Holdings LLC*, 27 A.3d 531, 536 (Del. 2011) (explaining different standard of review for motions to dismiss in Delaware and the federal system); *Cambium Ltd. v. Trilantic Capital Partners III L.P.*, 2012 WL 172844, at *1 (Del. Jan. 20, 2012), *disposition reported at* 36 A.3d 348 (Table) (same). Haese's reliance on *Chance* for its motion to dismiss analysis is therefore misplaced.

contends were violated, or that he reasonably believes (or believed) were violated by Insight Homes. *See, e.g., Curlett v. Madison Indus. Servs. Team, Ltd.*, 863 F. Supp. 2d 357, 364 (D. Del. 2012) (dismissing claim under DWPA for failure to adequately plead violations). There is no basis for a case to go forward under the scattershot allegations of the Counterclaim.

II. THE COUNTERCLAIM FAILS TO ALLEGE THAT ANY PURPORTED "WHISTLEBLOWING" ACTIVITY WAS THE PRIMARY BASIS FOR AN ADVERSE EMPLOYMENT ACTION AGAINST DEFENDANT

The Counterclaim offers only minimal and conclusory suggestions that Haese suffered any adverse employment action as a result of his purported "whistleblowing" activities. All that Haese alleges is that (1) Insight Homes brought on an additional financial person, (2) Haese lost access to unspecified "computer records," and (3) Haese was directed by his supervisor to focus on certain aspects of his employment that are inarguably part of his duties as set forth in the Job Description appended to Haese's Employment Agreement. *See* Op .Br. 14-17. Taken together, the allegations of the Counterclaim fail to raise an inference that Haese was subjected to any significant adverse employment action, much less that he suffered adverse action primarily related to protected activity.

Haese's effort to argue that he was constructively discharge is completely without merit. Ans. Br. 10-11. As Haese acknowledges, a "constructive discharge" claim requires that the employee establish that he suffered "intolerable conditions" of employment, measured by the reasonable person standard. Ans. Br. 11; *accord Smith v. Univ. of Delaware*, 47 A.3d 472, 477 (Del. 2012). Not only does the Counterclaim fail to mention the phrase "intolerable conditions" (Ans. Br. 11); the Counterclaim fails to allege any *facts* that would support a reasonable inference that he was subject to such conditions.

The other actions allegedly taken by Insight Homes with respect to Haese's employment are insignificant to the degree the Counterclaim fails to state a claim. Haese makes no claim that

8

he was disciplined in any way, or that his salary or benefits were changed in any way. Haese never took the position that he was terminated without cause under this Employment Agreement (although, after Insight Homes filed a claim against him, and two years after his employment ended, he now suggests that he was forced to resign). Ans. Br. 10-11. Moreover, Haese's newfound contention that he was forced out of his job is undermined by the fact – admitted by Haese – that upon his termination of employment he concurrently sought and accepted an ongoing consulting relationship with Insight Homes after his employment terminated.[8]

III. DEFENDANT'S REQUEST FOR LEAVE TO AMEND HIS COUNTERCLAIM SHOULD BE DENIED

In his Answering Brief, Haese requests leave to amend the Counterclaim. Ans. Br. 12. Haese has failed to either file an amended pleading, or to file a motion to amend under Rule 15 of the Federal Rules of Civil Procedure. Accordingly, there is no basis to allow Haese to amend his Counterclaim based on a request in his Answering Brief. *See Ramsgate Court Townhome Ass'n v. West Chester Borough*, 313 F.3d 157, 160 (3d Cir. 2002) (district court properly exercised discretion to refuse leave to amend that was requested in brief); *Huss v. Green Spring Health Servs., Inc.*, 18 F. Supp. 2d 400, 406 n. 13 (D. Del. 1998) (commenting that motion to amend is the proper method to request leave to amend).

---

[8] Haese's agreement to continue as a consultant for Insight Homes also refutes his newly-minted suggestion that he was concerned that his association with Insight Homes would somehow tarnish his reputation in the community. To the contrary, this entire case came into existence because Haese improperly sought to exploit his position of trust and association with Insight Homes in order to advance his competing business interests, all in violation of his Employment Agreement and his fiduciary duties. *See* Compl. ¶¶ 17-28.

## CONCLUSION

Based upon the arguments set forth above, and those set forth in its Opening Brief, Plaintiff-Counterclaim Defendant 36 Builders, Inc., doing business as Insight Homes, respectfully requests that the Counterclaim be dismissed in its entirety and with prejudice.

FAEGRE DRINKER BIDDLE & REATH LLP

/s/ *Joseph C. Schoell*
Joseph C. Schoell (Del. Bar No. 3133)
222 Delaware Avenue, Suite 1410
Wilmington, Delaware 19801
Tel: (302) 467-4200
Email: joseph.schoell@faegredrinker.com

*Attorneys for Plaintiffs 36 Builders, Inc., doing business as Insight Homes, and Insight Land Company, LLC*

January 28, 2021

# CERTIFICATE OF SERVICE

I, Joseph C. Schoell, hereby certify that on January 28, 2021, I caused a copy of the within document to be served upon the following counsel of record via CM/ECF:

Stephen P. Norman, Esquire
The Norman Law Firm
30838 Vines Creek Road; Unit 3
Dagsboro, DE 19939

                                                        */s/ Joseph C. Schoell*
                                                        Joseph C. Schoell (No. 3133)

January 28, 2021

ACTIVE.126009148.02